JOSEPH B. F. OSGOOD & another *vs.* HENRY B. FERNALD,
Judge of Insolvency.

Jurisdiction in proceedings in insolvency, pending before a commissioner when the *St.* of
1856, *c.* 284, took effect, vested upon his subsequent death in the judge of insolvency,
and not in the judge of probate.

SHAW, C. J. It appears by the petition of Joseph B. F. Os-
good and Jairus W. Perry, that insolvent proceedings were
commenced before John G. King, Esq., late commissioner of
insolvency for the county of Essex, on the 1st of July 1856, by
the issue of a warrant, on the application of Joseph Shotswell;
that afterwards, in due course of said proceedings, Shotswell
was adjudged an insolvent debtor; that Osgood was duly ap-
pointed clerk by said commissioner, and Perry having been duly
chosen assignee, the estate and property of Shotswell were
duly assigned to him by the commissioner. These proceed-
ings were continued in a due course of administration until
July 1857, at which time the said commissioner, John G. King,
died.

On recurring to the statute establishing courts of insolvency,
we find that the act passed on the 6th of June 1856, and took
effect thirty days after, on the 6th of July 1856. *St.* 1856, *c.* 284.
By § 40 of that act it is provided that the act shall not affect
any case in insolvency, which shall have been commenced
before the act shall take effect. These proceedings having
been rightly commenced before Commissioner King six days
before this act went into operation, by force of the statute he
continued to have the entire jurisdiction of the proceedings until
his decease.

But it now appears, that at the decease of Mr. King the es-
tate of Shotswell remained unsettled, no dividend of the assets
in the hands of the assignee had been made, and a question
arose whether the authority of taking jurisdiction of the unfin-
ished proceedings of an insolvent estate was vested by law in

# 58 ESSEX.

the judge of probate of the county, or in the judge of the court of insolvency.

The petitioners further show that they made a written application to the Hon. Henry B. Fernald, judge of the court of insolvency, requiring him to take jurisdiction of the said proceedings in insolvency, and to hold the meetings theretofore ordered by said commissioner in his lifetime, but the said Fernald declined and refused to take jurisdiction of said proceedings and to hold said meetings, for the reason, as he said, that the statutes gave him no authority in such cases. And the petitioners pray for a mandamus to the said Fernald, then and now judge of the court of insolvency for this county, requiring him to take jurisdiction of the said insolvent proceedings, and do all proper acts necessary to the due and orderly settlement of said estate.

The question arises, upon the construction of the statutes, In whom the law vests the prosecution of unfinished insolvent proceedings, when the commissioner, before whom they were commenced and are rightly proceeding, has deceased after the act establishing a court of insolvency came into operation? So many changes have been made in the provisions of the insolvent laws during the twenty years they have been in force, and the jurisdiction so often changed, having at different times been vested in judges of probate, masters in chancery, and now in a regularly constituted court of insolvency, it is not surprising that some doubt should be reasonably entertained on this subject. But it is obviously of great importance that all doubt, practically affecting so many interests, should be removed; and we have therefore paid the earliest attention to the question.

It is certain that whilst the general jurisdiction was vested in commissioners, and up to the time of the establishment of the court of insolvency, the law was, that if a commissioner should die, the jurisdiction of all unfinished insolvent proceedings pending before him should be transferred to the judge of probate. The question is, whether this course of legal proceedings was altered by the *St.* of 1856, *c.* 284, and the establishment of a court of insolvency. This act provides, in § 2, that the judges

of insolvency "shall have and exercise all the jurisdiction, power and authority that commissioners of insolvency now have and exercise" under the insolvent laws, that is, of originating all proceedings; "and all the provisions in said acts contained shall apply in like manner to said judges respectively as they apply to judges of probate, masters in chancery and commissioners of insolvency, except so far as said provisions or any of them may be by this act modified or repealed."

Now one of the functions of the judges of probate, at the time of passing the act, was to take and exercise jurisdiction over all unfinished proceedings pending before commissioners of insolvency at the time of their decease; and we think that those anterior provisions, which vested such jurisdiction in judges of probate, were by force of this clause declared to apply to judges of insolvency, and vested the same jurisdiction in them, on the decease of a commissioner, which had before been vested in judges of probate. And nothing in other parts of the act seems to us to alter or modify this construction.

We now recur again to § 40, which provides that "this act hall not affect any case in insolvency now commenced, or that shall hereafter be commenced before this act shall take effect; and the judge of probate, master in chancery or commissioner, before whom any such cases may be pending at the time this act shall take effect, shall have the same jurisdiction, power and authority in respect to them as they now have."

A doubt, perhaps the principal doubt, has been suggested on the first clause of this section, "shall not affect any case pending before a commissioner when this act takes effect." It is plausibly said, if the proceeding is not to be affected, the consequence is, that if the commissioner dies, the proceedings will be transferred to the judge of probate, because such was the law before. But the two parts must be construed together. The latter clause of the statute, after stating that this act shall not affect, &c. is, that the judge of probate, master in chancery or commissioner before whom, &c. shall have the same jurisdiction, &c. Now there are two cases in which the judge of probate might at that time have had jurisdiction; first, cases

pending from the time when judges of probate had original jurisdiction ; and secondly, cases in which commissioners had before that time died, and their unfinished cases had then been already transferred to the judges of probate.

Taking the whole section together therefore, our opinion is, that it was the intention of the law to continue the jurisdictio of judges of probate, where it had vested already in either of these cases, and also to the masters in chancery and commissioners of insolvency, in cases where they had already then acquired jurisdiction, and to enable them to complete the cases they had thus begun, and the purpose of the whole section was to accomplish this object; and it was not intended to confer jurisdiction in any case in which it had not then attached.

Then the next section, § 41, repeals " so much of the several acts to which this is in addition, as gives jurisdiction to judges of probate, masters in chancery and commissioners of insolvency," and all other inconsistent provisions.

We think this repeal does devest the jurisdiction given to judges of probate over unfinished proceedings, on the decease of commissioners, as well as the original jurisdiction of commissioners of insolvency.

Then if we are right in the construction of the second section, that all other jurisdiction, not actually vested in a judge of probate, shall hereafter vest in a judge of insolvency, which, though not so clearly expressed in terms as it might be, seems to us to be a fair construction of the provision, it brings the different parts of the act into harmony with each other, and best carries out the intent of the legislature.

Besides, it is plainly more consistent with the policy of the law, on establishing a regularly constituted court of insolvency, with its seal, its recording officer, and permanent judge, to hold that all jurisdiction in insolvency proceedings, not actually vested in other officers, should be transferred to that court; and it would be inconsistent with that policy to go back and establish so anomalous a proceeding as to vest a special jurisdiction in the probate court in an exceptional case without any apparent object to be obtained.   See *Dearborn* v. *Ames*, 8 Gray, 1.

The court are all of opinion that a proper mandate go to the judge of the court of insolvency for the county of Essex, requiring him to take and exercise jurisdiction in the case in question.

*W. C. Endicott*, for the petitioners.